WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tomas Martinez,<br><br>  Plaintiff,<br><br>v.<br><br>Town of Prescott Valley, et al.,<br><br>  Defendants. | No. CV-18-08192-PCT-SMB<br><br>**ORDER** |

Pending before the Court is Defendants' Motion for Summary Judgment, (Doc. 28, "Mot."; Doc. 42, "Resp."; Doc. 43, "Reply"). Each side submitted a statement of facts with corresponding exhibits.[1] (Doc. 29, "DSOF"; Doc. 41,[2] "PSOF"). The parties stipulated that oral argument was unnecessary to resolve this motion. (Doc. 44.) Having considered the

---

[1] At the outset, the Court notes that the evidence Defendants submitted to support their motion includes an affidavit by Sergeant McCamish, police reports documenting the underlying incident, including one by McCamish, and six questions and corresponding answers from McCamish's deposition. (*See* Docs. 28-1, 28-2, 43-1.) At no point does Mr. Martinez generally object to the admissibility of any of this evidence or argue that any specific portion is inadmissible. *See* Fed. R. Civ. P. 56(c)(2); *Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) ("Defects in evidence submitted in opposition to a motion for summary judgment are waived 'absent a motion to strike or other objection.'" (citation omitted)). Although the police reports may ultimately be inadmissible at trial, the officers' statements within them might not be. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. [They] instead focus on the admissibility of its contents." (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)); *see also N.H. Ins. Co.*, 953 F.2d at 485.

[2] Mr. Martinez's controverting statement of facts violates Local Rule 56.1(b) in two ways. *See* LRCiv 56.1(b). Although it required that he respond to each paragraph in Defendants' statement of facts in separately numbered paragraphs, he listed paragraph fourteen twice and skipped paragraph twenty. The Rule also required him to set forth additional facts in separately numbered paragraphs. Instead of doing that, he submitted four-and-a-half pages of unnumbered paragraphs containing some facts already presented by Defendants.

parties' submissions and relevant law, the Court issues the following Order.

## I.  BACKGROUND

On a late Arizona Saturday night in August almost three years ago, Officer Shook of the Town of Prescott Valley Police Department went to twenty-one-year-old Tomas Martinez's home to check on him because his wife was concerned that he might be suicidal. (PSOF ¶ 1; DSOF ¶ 1.) Shortly after Officer Shook arrived, Mr. Martinez, who is of a large, stocky build, agreed to be transported to a Crisis Stabilization Unit ("CSU") for a mental health evaluation. (PSOF ¶¶ 2-4; DSOF ¶¶ 2-4.) Following Mr. Martinez's arrival at CSU, he became uncooperative and CSU staff called Officer Shook to request that he be relocated to Yavapai Regional Medical Center ("YRMC") for additional screening.[3] (PSOF ¶ 5; DSOF ¶ 5.) After receiving the call, Officer Shook returned to the CSU to take Mr. Martinez to YRMC. (PSOF ¶ 6; DSOF ¶ 6.) Although Officer Shook explained to Mr. Martinez that he needed to wear handcuffs before being transported to YRMC for a Title 36 involuntary evaluation, he was escorted out of the CSU without handcuffs on because he refused to wear them. (PSOF ¶¶ 7-11; DSOF ¶¶ 9-12.) These facts are undisputed.

What happened outside the CSU is disputed in part. After escorting Mr. Martinez outside, Officer Shook explained to Sergeant McCamish, who had just arrived on scene, that Mr. Martinez was refusing to wear handcuffs. Officer Shook then heard Sergeant McCamish ask Mr. Martinez to wear handcuffs. (Doc. 28-2 at 2-3.) When Mr. Martinez refused again, Officer Shook heard Sergeant McCamish repeatedly order him to submit to wearing handcuffs. (*Id.*) Sergeant McCamish's affidavit mirrors what Officer Shook heard. It states that Sergeant McCamish told Mr. Martinez three times that he had to wear handcuffs before being transported to YRMC for his and the other officers' safety, but Martinez repeatedly refused. (PSOF ¶¶ 13-14; DSOF ¶¶ 13-14.) After these repeatedly refusals, Sergeant McCamish used a head redirection tactic to bring Mr. Martinez to the ground. (PSOF ¶ 15; DSOF ¶ 15.) Mr. Martinez's affidavit states that Sergeant McCamish

---

[3] Although Mr. Martinez says he disputes this, he lacks personal knowledge of what CSU staff told Officer Shook and submitted no contradictory testimony by any CSU staff member.

never told him he had to be handcuffed. Instead, it states that Sergeant McCamish just told Mr. Martinez "You need to wear handcuffs" and slammed him to the ground, presumably without giving him the chance to comply. Mr. Martinez also disputes that he refused to be handcuffed and that he was involuntarily taken to YRMC. (PSOF ¶¶ 8, 14.)

After Mr. Martinez is on the ground, he does not dispute Defendants' version of the facts. Specifically, that Officers Shook and Sease unsuccessfully assisted Sergeant McCamish in detaining him while another officer asked whether she should use her taser on him, to which McCamish advised not to. (PSOF ¶¶ 16-18; DSOF ¶ 16-18.) He also does not dispute that Officers Shook and Sease and Sergeant McCamish could not detain him because his arms were underneath him. (PSOF ¶ 19; DSOF ¶ 19.) Or that, in an effort to cause him to release his arms from under his body, Sergeant McCamish applied several pressure point maneuvers, consistent with department policy, which eventually proved successful in obtaining his compliance. (PSOF ¶ 19, 21-23; DSOF ¶¶ 19-22.)

A year later, Mr. Martinez sued Sergeant McCamish, Officer Sease, Officer Shook, and the Town of Prescott Valley ("Town") under various legal theories for compensatory damages and injunctive and declaratory relief based on this incident. (*See* Doc. 1, "Compl." ¶¶ 1, 32-66.) His claims against all Defendants include (1) excessive force in violation of the Fourth and Fourteenth Amendments, (2) civil assault and battery, and (3) negligence and gross negligence, (*id.* ¶¶ 32-51, 57-61), while his claims solely against the Town include (4) negligent training and (5) negligent hiring and retention. (*Id.* ¶¶ 52-56, 62-66.) Defendants move for summary judgment on each claim.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The Court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id*. at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("facts must be viewed in the light most favorable to the non-moving party *only* if there is a 'genuine' dispute as to those facts" (emphasis added) (citation omitted)). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th

Cir. 2002).

## III. DISCUSSION

Defendants argue that summary judgment is appropriately granted in their favor on each claim. Mr. Martinez disagrees, in part. He does not oppose summary judgment on his Fourteenth Amendment claims[4] or his negligence and assault and battery claims against Sergeant McCamish, Officer Shook and Officer Sease. (*See* Resp. at 8 ("Martinez does not request that the Court permit him to proceed to trial on his negligence claims. Instead, [he] seeks to pursue his assault and battery and negligent hiring actions against the Town based [on] its Officers intending to cause him harmful contact.")). In other words, he requests that, in addition to his Fourth Amendment claim against each Defendant, the "Court permit [him] to try his claims of assault and battery and negligent hiring of Sergeant McCamish against the Town." (*Id.*) Because summary judgment is appropriate on each claim, none will proceed to trial. *Cf. Celotex*, 477 U.S. at 322.

### A. Excessive Force Under the Fourth Amendment

Mr. Martinez's Fourth Amendment excessive force claims are brought against Sergeant McCamish, Officer Shook, Officer Sease, and the Town under 42 U.S.C. § 1983, which provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[4] Even disregarding Mr. Martinez's failure to oppose summary judgment on his Fourteenth Amendment claims, the Court nevertheless finds them "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (noting the Supreme Court's "reluctan[ce] to expand the concept of substantive due process"); *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (holding that a "[s]ubstantive due process analysis is therefore inappropriate . . . if [plaintiff's] claim is 'covered by' the Fourth Amendment").

42 U.S.C. § 1983. "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). On the other hand, to establish municipal liability under § 1983, it must be shown that a municipal policy or custom caused plaintiff's injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

"While the plaintiff in a personal-capacity suit need not establish a connection to a governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses." *Hafer*, 502 U.S. at 25 (citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Community House, Inc. v. City of Boise*, 623 F.3d 945, 964-65 (9th Cir. 2010). "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (citation omitted); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[T]he two prongs of qualified immunity balance two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (citing *Pearson*, 555 U.S. at 231). Judges may "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Mr. Martinez alleges that Defendants violated his Fourth Amendment rights while detaining him for his and the officers' safety before transporting him to YRMC for a mental

health evaluation. (Compl. ¶¶ 32-44.) Sergeant McCamish, Officer Shook, and Officer Sease argue that they are entitled to qualified immunity from this claim, while the Town argues the claim against it fails because Mr. Martinez "cannot demonstrate the existence of a policy or custom." (Mot. at 4-10; Reply at 5-7). Both arguments are correct.

           i.    <u>Whether the Officers Used Excessive Force in Violation of the Fourth Amendment is a Jury Question.</u>

Excessive force is examined under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 389, 395 (1989). Assessing reasonableness requires that courts pay "careful attention to the facts and circumstances of a particular case," *id.* at 396, and weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). "The 'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Saucier*, 533 U.S. at 207 ("Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred."). "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *County of Los Angeles v. Mendez*, 137 S.Ct. 1539, 1547 (9th Cir. 2017).

Mr. Martinez claims a trial is necessary to resolve material facts concerning whether the Officers used excessive force under the Fourth Amendment. In particular, he claims that he "disputes" thirteen paragraphs in Defendants' statement of facts. (*See* PSOF ¶¶ 5, 7-10, 13-16, 18-19, 22-23.) Most of these disputes, however, solely propped up by his affidavit, are not genuine, nor do they concern material facts impacting this case's outcome. *See Liberty Lobby*, 477 U.S. at 247-248 (reasoning how unsupported conclusions that genuine issues of material facts exist need not be accepted as evidence creating triable issues); *see also S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (disregarding affidavit at summary judgment because it "states only conclusions, and not such facts as would be admissible in evidence").

Notably, Mr. Martinez does not dispute that once on the ground, "McCamish attempted several pressure point maneuvers to try and force [him] to remove his arms which were now under his body as he laid face down on the ground," (PSOF ¶ 19; DSOF 19). He also concedes the minor extent of his injury by not disputing whether "McCamish noticed that [he] had a *small scrape* on his face." (DSOF ¶ 20 (emphasis added)). Nor does he have any evidence to dispute that Sergeant McCamish's maneuvers "were minimally invasive, consistent with his training and consistent with his Department policy." (DSOF ¶ 23). However, Mr. Martinez does dispute material facts impacting the viability of his Fourth Amendment claim. These facts include whether he was warned that he needed to be handcuffed and if he then refused to be handcuffed before Sergeant McCamish brought him to the ground. *See Liberty Lobby*, 477 U.S. at 248 ("[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). If he refused, a reasonable juror, after considering the other circumstances here, could find that Sergeant McCamish used reasonable force to handcuff him before transporting him to YRMC for additional screening. But if he consented to being handcuffed and Sergeant McCamish took him to the ground anyways, a reasonable juror could find his use of force unreasonable.

When considering these genuinely disputed material facts, the Court finds that the issue of whether Sergeant McCamish's conduct violated Mr. Martinez's Fourth Amendment rights is for the jury. *See id.* at 251-52. For the Court to find no violation, it would have to believe Sergeant McCamish's version of the facts over Mr. Martinez, which would be improper. *See Tolan*, 572 U.S. at 656; *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." (quoting *Tolan*, 572 U.S. at 656). However, even accepting the limited facts supporting a Fourth Amendment violation in the light most favorable to Mr. Martinez, there appears to be no evidence supporting a Fourth Amendment violation by Officers Shook or Sease. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) ("Sweeping conclusory allegations will not suffice to prevent summary judgment. The

[plaintiff] must set forth specific facts as to each individual defendant's" role in each alleged constitutional deprivation."). Mr. Martinez argues, without meaningfully distinguishing between Sergeant McCamish, Officer Shook, and Officer Sease's conduct, that they acted unreasonably because he "posed no threat, had committed no crime and did not actively resist or evade arrest." (*Id.*) However, Mr. Martinez fails to show how Officers Shook and Sease's unspecified conduct violates the Fourth Amendment, which would entitle them to qualified immunity. *See Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018) ("If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." (citation omitted)).

    ii. <u>Mr. Martinez Identifies No Clearly Established Right that Any Officer Violated.</u>

The inquiry into whether the violated right was clearly established "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "A plaintiff 'bears the burden of showing that the right at issue was clearly established.'" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quoting *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011)); *see also Kramer v. Cullinan*, 878 F.3d 1156, 1164 (9th Cir. 2018).

Mr. Martinez argues that the clearly established right that Sergeant McCamish, Officer Shook, and Officer Sease violated was his "Fourth Amendment right to be secure in his person." (Resp. at 6.) Defendants argue in response that they were not on notice that their conduct violated the Fourth Amendment because their maneuvers were minimally invasive and consistent with their training and Department policy.[5] Notwithstanding whether the Fourth Amendment was violated in detaining Mr. Martinez, an individual who

---

[5] Mr. Martinez offers no evidence on police procedure or use of force. He also does not challenge that the Department had a policy of transporting Title 36 patients in handcuffs.

- 9 -

was brought to the CSU for a mental health evaluation because he was at risk of harming himself and later had to be transported to YRMC for a Title 36 involuntary examination after being uncooperative at the CSU, qualified immunity would still attach for each Defendant because Mr. Martinez does not meaningfully show how any Defendant's conduct violated his clearly established rights under these circumstances. *Emmons*, 921 F.3d at 1174. Instead, and in just generally citing *Graham v. Connor*, 490 U.S. 386 (1989), Mr. Martinez blankly claims Defendants, without differentiating between the conduct of each, violated his right "to be secure in [his] person against unreasonable seizures." (Resp. at 6-7.) This hollow, unreasoned explanation of how each officer violated clearly established law is not enough to displace qualified immunity.[6] *See Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam) ("[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." (alterations, quotation marks, and citation omitted)); *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (9th Cir. 2018) (per curiam) ("Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." (quoting *Mullenix*, 136 S.Ct. at 309)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." (internal citation omitted)). Mr. Martinez's extraordinarily generic attempt in citing the "general proposition . . . that an unreasonable . . . seizure violates the Fourth Amendment is of little help in determining whether the violative nature of the particular conduct is clearly established." *Cf. id.*; *see also Kramer*, 878 F.3d at 1164 ("The Supreme

---

[6] Mr. Martinez also claims that Defendants admitted that forcibly handcuffing someone without first giving them an opportunity to cooperate may violate their Fourth Amendment rights. (*See* PSOF at 7.) However, Defendants' statements as they concern this hypothetical situation do not, by themselves, support a finding that they violated Mr. Martinez's clearly established rights here. If such an argument were valid, officers could effectively, and conveniently, decide whether a right was clearly established law to obtain qualified immunity.

- 10 -

Court has cautioned us against defining clearly established law 'at a high level of generality.'" (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam)). In other words, Mr. Martinez highlights no existing precedent making unconstitutional the officers' minimally invasive response to a suicidal individual who was being uncooperative and refusing to wear handcuffs before being transported for an involuntary mental health screening at a hospital "beyond debate." *See Ashcroft*, 563 U.S. at 741. As a result, Sergeant McCamish, Officer Shook, and Officer Sease are entitled to qualified immunity because the contours of Mr. Martinez's Fourth Amendment rights in these circumstances are not sufficiently clear in such a way that every reasonable officer would have understood what they were doing violates those rights. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### iii. The Town is Not Liable Under *Monell*.

As noted above, a § 1983 plaintiff must point to a municipal policy or custom that caused his injury to establish municipal liability. *See Monell*, 436 U.S. at 694. This is because "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.*; *see also Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) ("As our § 1983 municipal liability jurisprudence illustrates, . . . it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.").

Here, Mr. Martinez claims municipal liability attaches because the Town "ratified and adopted" the "illegal acts" of Sergeant McCamish, Officer Shook, and Officer Sease as policy *after the incident in question*. (Resp. at 7.) He argues this is the case because the Town's police chief, claiming to be an official policy maker, expressly approved of their conduct when he "conducted a flawed investigation that made no effort to interview the Martinezes, did not even look at Title 36 paperwork and adopted the Officers' actions." (*Id.*) This theory of municipal liability makes no sense. In fact, it utterly misconstrues causation. The Town cannot be liable for conduct taken pursuant to an unconstitutional policy that was not in existence at the time the conduct in question occurred. Without identifying a municipal policy in effect at the time of the incident, Mr. Martinez cannot

show his asserted Fourth Amendment violation against the Town "was caused by an *existing*, unconstitutional municipal policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (emphasis added). Accordingly, summary judgment will be granted in the Town's favor.

### B. Assault and Battery

Mr. Martinez also alleges that Defendants are liable for assault and battery. (Compl. ¶¶ 45-51.) Although he abandons these claims as they relate to Sergeant McCamish, Officer Shook, and Officer Sease as individuals, he claims the evidence shows the Town is vicariously liable for Sergeant McCamish's conduct.[7] (*See* Resp. at 8.) While Defendants do not address Mr. Martinez's *respondeat superior* claim against the Town, it still fails as a matter of law because the Town cannot be vicariously liable for a nonexistent underlying tort. *See, e.g.*, *Warfield v. Shell Oil Co.*, 106 Ariz. 181, 184 (1970) ("If the servant breached no duty to the plaintiff, then the master cannot be held liable on a theory of vicarious liability." (citation omitted)). Thus, Defendants' request for summary judgment on Mr. Martinez's assault and battery claim against the Town under a *respondeat superior* theory based on unestablished tortious conduct by Sergeant McCamish will be granted.

### C. Negligent Training, Hiring, and Retention

Mr. Martinez last alleges that the Town negligently trained, hired, and retained Sergeant McCamish, Officer Shook, and Officer Sease. (Compl. ¶¶ 52-56, 62-66.) In responding to Defendants' motion, however, Mr. Martinez only mentions the negligent hiring claim against the Town as it concerns Sergeant McCamish. (*See* Resp. at 8.) The evidence supporting this claim, he argues, is that the police chief "testified that the Town knew of McCamish being sued for excessive force and hired him with such knowledge." (*Id.*) He claims "[t]his knowledge is . . . sufficient to support [his] claim of negligent hiring." (*Id.*) Although Defendants cite *Monell*, which is clearly inapplicable in this context, they argue that "[t]here is no evidence that any of the individual officers were

---

[7] Defendants initially argued that state law immunizes Sergeant McCamish, Officer Shook, and Officer Sease from liability for these claims. (Mot. at 9.) However, the Court need not address this argument because Mr. Martinez does not oppose summary judgment on these claims against them as individuals.

negligently hired." (Mot. at 11; *see also* Reply at 7 ("[Mr. Martinez's] evidence simply fails to establish any negligent hiring of Sergeant McCamish.")).

The Court begins and ends with Mr. Martinez's relinquishment of his negligence claims. (*See* Resp. at 8 ("Martinez does not request that the Court permit him to proceed to trial on his negligence claims.")). Without any underlying negligence claim, or even proof that Sergeant McCamish, or any municipal employee for that matter, somehow acted negligently, there can be no negligent hiring claim against the Town. *See*, *e.g.*, *Mulhern v. City of Scottsdale*, 165 Ariz. 395, 398 (1990) ("In order for the employer to be held liable for negligent hiring, retention or supervision, the employee must have committed a tort. Thus, the employer is not negligent in hiring or retaining the employee as a matter of law if the theory of the employee's underlying negligence fails." (internal and external citations omitted)). Because Mr. Martinez does not assert that Sergeant McCamish was negligent, the Town is entitled to summary judgment here as well.

### IV. CONCLUSION

Summary judgment will be granted in full. None of the claims that Mr. Martinez decides to oppose summary judgment on survives. As to the Fourth Amendment claims, Sergeant McCamish, Officer Shook, and Officer Sease are entitled to qualified immunity and the Town cannot be liable under *Monell* based on a nonexistent unconstitutional policy or custom at the time of the incident. Summary judgment will also be granted on the assault and battery claims against the Town under a *respondeat superior* theory for Sergeant McCamish's conduct because the individual tort claim against him was abandoned. Lastly, summary judgment will be granted on the negligent hiring claim against the Town for Sergeant McCamish's conduct because no underlying negligent conduct by McCamish is supported, let alone identified.

////
////
////

Accordingly,

**IT IS ORDERED GRANTING** Defendants' Motion for Summary Judgment, (Doc. 28). The Clerk of Court is directed to terminate this case.

Dated this 19th day of June, 2020.

Honorable Susan M. Brnovich
United States District Judge